IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 12 CR 49 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| ARTURO TERRELL | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Arturo Terrell's motion to suppress statements [59]. For the reasons set forth below, the Court declines Defendant's request to set this matter for a suppression hearing and denies Defendant's motion to suppress [59].

**I.   Background**

   **A.   Request for Evidentiary Hearing**

The Seventh Circuit has described "the resolution of a motion to suppress" as a "fact-intensive inquiry" in which the district court must make "credibility determinations" based on "its opportunity at the suppression hearing to hear the testimony and observe the demeanor of the witnesses." *United States v. Kempf*, 400 F.3d 501, 503 (7th Cir. 2005); see also *United States v. Springs*, 17 F.3d 192, 194 (7th Cir. 1994) (explaining the deference given to the credibility determinations of the district judge who has "heard the conflicting testimony, observed the witnesses, and then reached a determination about whom to believe"). However, before a suppression hearing is warranted, a defendant has the burden of presenting "definite, specific, detailed, and nonconjectural facts" to establish that there are disputed issues of material fact sufficient to warrant an evidentiary hearing. *United States v. Rodriguez,* 69 F.3d 136, 141 (7th Cir. 1995). The defendant must make this *prima facie* showing of illegality without relying on vague or conclusory allegations. See *United States v. Randle,* 966 F.2d 1209, 1212 (7th Cir.

1992). As set forth below, after considering Defendant's motion to suppress, the Court concludes that Defendant has not met his burden.

**B. Facts**

The indictment charges Defendant Arturo Terrell with three narcotics-related violations (Counts I-III) and with unlawful possession of a firearm by a convicted felon (Count IV), arising from Defendant's arrest on the evening of January 19, 2012, inside his home in Dolton, Illinois. The FBI executed a search warrant at Defendant's home following the alleged purchase by a confidential informant of approximately ten ounces of crack cocaine from Defendant. Agents arrested Defendant almost immediately after the informant left Defendant's house with the crack cocaine. When the warrant was executed, Defendant's son and girlfriend were present in the house. The affidavit in support of the search warrant summarized a recorded meeting the previous day between Defendant and the informant, in which Defendant allegedly agreed to sell ten ounces of crack cocaine to the informant for $10,000.[1] The search warrant affidavit also recited information from the informant concerning Defendant's past possession of firearms, as well as Defendant's history of firearm-and-narcotics-related convictions, including a 2004 conviction for a home invasion involving a firearm.

The motion to suppress avers that agents started to search Defendant's house at approximately 8:30 p.m. Defendant attests that, after agents detained him but before he was given *Miranda* warnings, agents asked him whether and where any weapons were located in the residence, as well as whether he had a Firearm Owners Identification card. According to the complaint affidavit, the search yielded drug paraphernalia, approximately two additional ounces of suspected crack cocaine, and a semi-automatic pistol that Defendant allegedly indicated was

---

[1] The transaction between Defendant and the confidential informant on January 19, 2012, also was recorded by audio and video and monitored by agents via real-time transmission.

stored in the master bedroom. Then, at approximately 8:53 p.m., agents transported Defendant from his residence to "a law enforcement facility" in Chicago. There, the motion to suppress avers that Defendant waived his *Miranda* rights before making both an oral and a written statement to agents.

II.     **Analysis**

Defendant asserts two claims in his motion to suppress. First, Defendant seeks to suppress statements that he made at the search location (his home) in response to questions about the presence and whereabouts of weapons. Second, Defendant seeks to suppress both his pre- and post-*Miranda* statements on the basis that his *Miranda* waiver was not knowing, voluntary, or intelligent because he was "under the influence of drugs and alcohol" and thus incapable "of understanding the rights waiver document"; in other words, Defendant maintains that his use of drugs and alcohol rendered him incapable of knowingly and voluntarily waiving his privilege against self-incrimination.

    A.      **Statements at Defendant's Home**

Defendant maintains that following his arrest, agents asked him about weapons without first administering *Miranda* warnings. However, even accepting Defendant's version of events, under the public safety exception to *Miranda*, the agents conducting the search of Defendant's residence were entitled to ask him about the presence of weapons. In fact, applying the public safety exception, the Seventh Circuit has upheld the denial of a suppression motion on remarkably similar facts. In *United States v. Are*, officers executed an arrest warrant at the home of Antwan Daniels, who was wanted on drug conspiracy charges and had several prior drug- and weapons-related arrests. 590 F.3d 499, 504 (7th Cir. 2009). After the arrest team had conducted a protective sweep, handcuffed Davis, and gathered the other occupants of the home in a single

room, officers asked the Daniels "whether there were any weapons in the house, to which he replied that there was an AK-47 under the dresser in the bedroom." On appeal of the district court's denial of his motion to suppress these statements, Daniels argued that the public safety exception was inapplicable "because he and the house were secured * * * by nine armed officers who had performed a protective sweep and had no reasonable concern for their safety or for that of anyone else." 590 F.3d at 505.

The Seventh Circuit disagreed, holding that "[t]he FBI agent's question to Daniels about the presence of a weapon in the house falls within the 'public safety' to *Miranda*." 590 F.3d at 506. "Though Daniels was cuffed and the officers and agents had conducted a brief protective sweep," the appeals court reasoned,

> they knew that Daniels was a drug dealer who was being arrested for drug conspiracy charges. They also knew that he had several prior drug and weapons offenses. But they did not know the location of any weapon that he may have had in the house. A weapon might have been hidden near the place where the officers placed Daniels before taking him outside and thus would have been within his reach * * * * Therefore, it was reasonable for the officers and agents to believe that Daniels might have a gun on the premises and to ask him whether he had any weapons in the house.

*Id.* The court also noted that "the presence of Daniels' wife and children bolsters the conclusion that the question about a weapon falls within the public safety exception." *Id.* Moreover, "even when a quick protective search of a residence is conducted, the potential presence of an undiscovered but dangerous individual with access to a weapon cannot be discounted." *Id.* at 506-07.

*Are* compels the same result here. Defendant has multiple convictions for both drug trafficking and firearm violations; this fact was disclosed in the search warrant affidavit and thus known to the agents conducting the search of his home. Further, agents had just monitored a transaction in which Defendant manufactured and distributed a sizeable quantity of crack cocaine

within the search location. As the Seventh Circuit recently observed in another case upholding application of the public safety exception, "drug dealers are known to arm themselves." *United States v. Hernandez*, 751 F.3d 538, 542 (7th Cir. 2014) (internal quotations and citation omitted). Finally, as in *Are*, the presence of other people inside the search location, "bolsters the conclusion that the question about a weapon falls within the public safety exception." 590 F.3d at 506.

Defendant's motion does not raise a material dispute concerning the facts that bring this case within the public safety exception—his criminal history, the basis for the search warrant (i.e., probable cause predicated on a just-completed drug transaction), or the presence of third parties in his home at the time of the search. Accordingly, he has not carried his burden to demonstrate the necessity for an evidentiary hearing. See *Rodriguez*, 69 F.3d at 141 ("To warrant a hearing, the defendant's submission must demonstrate that there is a disputed material issue of fact.") (internal quotations and citations omitted); see also *United States v. Toro*, 359 F.3d 879, 885 (7th Cir. 2004). Further, in regard to the agents' question about whether Defendant possessed a Firearm Owners Identification card, the Government represents that it will not seek to introduce Defendant's response to that question; thus, his motion is denied as moot to the extent it seeks to suppress that response.

In short, because Seventh Circuit precedent makes clear that the public safety exception to *Miranda* applies, Defendant's motion to suppress statements responsive to questions about the presence and location of weapons in his home will be denied without an evidentiary hearing.

### B. Knowing and Voluntary

Defendant also seeks to suppress both his pre- and post-*Miranda* statements "as not being knowingly, voluntarily and intelligently made due to his being under the influence of drugs and

5

alcohol." For a criminal defendant's post-arrest statement to be admitted into evidence against him during a criminal trial, the government must be able to demonstrate by a preponderance of the evidence that the defendant waived his *Miranda* rights before making the statement. *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010). A defendant may waive his *Miranda* rights "only if that waiver was made 'voluntarily, knowingly and intelligently.'" *United States v. Carson*, 582 F.3d 827, 833 (7th Cir. 2009) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). More specifically, the waiver inquiry "has two distinct dimensions." *Burbine*, 475 U.S. at 421. A waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* Additionally, a waiver must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

In determining whether a defendant waived his *Miranda* rights "voluntarily, knowingly and intelligently," courts evaluate the "totality of the circumstances" surrounding the waiver.[2] *Burbine*, 475 U.S. at 421. The Seventh Circuit has identified a number of factors relevant to this inquiry, including "the nature and duration of the questioning, whether the defendant was prevented from eating or sleeping, and whether the defendant was under the influence of drugs or alcohol." *Watson v. Detella*, 122 F.3d 450, 453 (7th Cir. 1997). Courts also consider "the defendant's age, intelligence, education, and experience with the criminal justice system." *Id.* According to the Seventh Circuit, "absent a showing of some type of official coercion * * * a defendant's personal characteristics alone are insufficient to render a confession involuntary." *Id.* That said, "[w]hen interrogating officers should reasonably have known that a suspect was

---

[2] Although whether a defendant made a knowing and voluntary waiver of his *Miranda* rights is a separate inquiry from a claim challenging the voluntariness of a confession, *Etherly v. Davis*, 619 F.3d 654, 662 (7th Cir. 2010), "in evaluating whether a [defendant] voluntarily waived [her] *Miranda* rights, [courts] consider the same factors * * * consider[ed] * * * in assessing the overall voluntariness of a confession." *Ruvalcaba v. Chandler*, 416 F.3d 555, 562 (7th Cir. 2005).

6

under the influence of drugs, or alcohol, 'a lesser quantum of coercion may be sufficient to call into question the voluntariness of the confession." *United States v. Haddon*, 927 F.2d 942, 946 (7th Cir. 1991). Courts generally will hold that a defendant's waiver is knowing and intelligent if he "understands that he can refuse to talk to the people asking him questions or stop the questioning once it begins; that the people asking him questions are not his friends but are police or law enforcement personnel who are trying to show he is guilty of a crime; that he can ask for and get a lawyer who will help him; and that he does not have to pay for that lawyer." *Collins v. Gaetz*, 612 F.3d 574, 588 (7th Cir. 2010). "It is only when the evidence in the case shows that the defendant could not comprehend even the most basic concepts underlying the *Miranda* warnings that the courts have found an unintelligent waiver." *Id.*

Again, even accepting Defendant's conclusory allegations about his level of intoxication, the allegations do not entitle him to a hearing, much less suppression of his statements. "[A] defendant's intoxication or low intelligence by itself—without some showing of coercion by the government—will not negate involuntariness." *United States v. Chrismon*, 965 F.2d 1465, 1469 (7th Cir. 1992); *Toro*, 359 F.3d at 885 (quoting same and instructing that "intoxication alone does not show involuntariness"). "A diminished mental state is only relevant to the voluntariness inquiry if it made mental or physical coercion by the police more effective." *Toro*, 359 F.3d at 885 (quoting *Chrismon*, 965 F.2d at 1469). Here, as in *Toro*, "[s]ince [Defendant] did not detail any facts showing mental or physical coercion by the police, he did not meet his burden of showing a prima facie case of involuntariness" and therefore an evidentiary hearing is not warranted. *Toro*, 359 F.3d at 885. Further, in addition to failing to allege any coercion on the part of interviewing agents, Defendant's allegations are too conclusory to make a *prima facie* showing of intoxication in any event. *Id.* ("Although Toro claimed that his intoxication caused

7

him to be unaware of the events surrounding his arrest and to not understand his *Miranda* rights, Toro provided no details about how he was intoxicated, what substance he was intoxicated with, or the level of intoxication he suffered."). Accordingly, Defendant's motion to suppress statements made while purportedly "under the influence of drugs and alcohol" will be denied without an evidentiary hearing.

## III. Conclusion

For these reasons, the Court denies Defendant Arturo Terrell's motion to suppress statements [59].

Dated: October 22, 2014

Robert M. Dow, Jr.
United States District Judge